IN RE VÍCTOR RIVERA COLÓN and ANGEL RIVERA COLÓN, Attorneys-Notaries, Respondents.

No. 56. Argued May 11, 1944.—Decided June 1, 1944.

*Félix Ochoteco, F. Fernández Cuyar, Benicio Sánchez Castaño,* and *R. González,* for respondents. *R. A. Gómez, Prosecuting Attorney, (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for The People.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The facts which gave rise to this disbarment proceeding are as follows:

On October 18, 1938, in the ward "Pasto" of the Municipality of Morovis, a young boy, Luis Calderón, was kicked by a horse belonging to Manuel Cacho. The wound suffered by the child on the forehead caused a fracture of the skull, with a depression of the frontal bone and of the meninges, which was described by the physician as severe and of possible or probable serious consequences in the future.

The mother of the injured minor contracted the services of Attorney Víctor Rivera Colón, one of the defendants, to defend the interests of the child, with instructions to bring an action against the owner of the horse for the recovery of the damages sustained by the minor. Four days after the accident, on October 28, 1938, the law firm, Rivera Colón & Rivera Colón, by Víctor Rivera Colón, filed a motion in the District Court of Arecibo to sue in *forma pauperis,* together with a complaint against Manuel Cacho Vega for the recovery of $5,000 as damages. The injuries suffered by the minor are described in the complaint wherein it is stated that the horse "rushed against the minor plaintiff kicking him with the hind leg on the forehead, that Luis Calderón fell to the ground unconscious and mortally wounded sustaining other wounds on different parts of his body." It is further stated "that by reason of said accident, Luis Calderón has suffered and is suffering at this time, intense nervous shocks, sleeplessness, insomnia, his health has been impaired; that he is in a constant state of restlessness, and that he is suffering from headaches and pains in all his body as well as mental and moral anguish, etc."

On December 6, 1938, the same law firm filed in the district court "a motion for dismissal" wherein they stated that they had sought compensation for $5,000 "without having

examined the injury suffered by the minor Luis Calderón and believing in good faith the statements of the minor's mother; that after having examined the wound and "after conferring with the physician who treated said boy," the attorneys, "acting with the express authorization of the petitioner, have reached the conclusion that the amount claimed is entirely exaggerated and out of proportion to the slight damages which the injured party has sustained." It was stated in the motion that on that same day he had filed a complaint in the Municipal Court of Ciales based on the same cause of action, praying for the recovery of $150 as damages and $50 as attorney's fees. The complaint filed in the municipal court is an exact copy of the one filed in the district court and the dismissal of which was sought.

On December 6, 1938, the district court denied the motion for dismissal: (1) because taking into consideration the allegations of both complaints, the court believes that there is no reason to dismiss the case in the district court in order to take it to an inferior court; (2) because any exaggeration or error in the amount claimed does not matter, inasmuch as the judge may discretionally award any sum that may be just after hearing the physician and examining the minor; (3) because since it appears from the record that the minor's mother is illiterate, it must be assumed that she is unable to realize the condition of the minor and the consequences which might follow.

On December 12, 1938, Víctor Rivera Colón, as attorney for the plaintiff, moved the court to set the 16th of that same month for the presentation of evidence in support of his motion for dismissal. There is no showing from the record that any action was taken as to this motion. On January 28, 1939, the same attorneys filed an amended complaint in the district court including as party defendant Ignacio Cacho Parés, as son of the other defendant, and alleged that this new defendant was lessee of his father's property and

was the one who owned and used the horse. In the amended complaint the injuries sustained by the minor are described as slight and the same amount of $5,000 is prayed for.

On March 23, 1939, while the decision of the demurrer interposed by the defendants was pending, the attorneys for the minor filed a "motion for judgment," wherein they stated that they were convinced that Manuel Cacho Vega was not liable for the accident, his son Ignacio being solely liable as lessee of the property and owner of the horse; that Ignacio Cacho had offered to compromise for $200 which amount the plaintiff considered fair and reasonable "since the injuries received by the minor are not so serious or important as was stated in the original complaint filed in this case." The amount of $200 included expenses and attorney's fees. On March 31, 1939, the hearing of the motion was held. There is no showing from the record of the case in the lower court as to what happened at the hearing on the motion to compromise for $200. However, the evidence introduced in this court at the hearing on the disbarment proceeding established the following facts:

When the motion to compromise for $200 was filed, Judge Agraít stated that he would not approve of the proposed settlement, unless the physician would come to testify and the minor were produced in order that the court could see him and judge his condition. Dr. Marchand testified that the boy had improved as to the treatment of the wound and added: "The consequences of a depression such as this, are always for life. The boy remains depressed, useless for society even though he should recover from the wound. I believe that he is permanently disabled." After hearing the testimony of the physician, the judge decided not to accept the compromise and then Attorney Angel Rivera Colón stated that he could not understand it and that he was going to abandon the motion to compromise. On April 24, 1939, the same attorney filed a motion abandoning the compromise

which the court had already refused on March 31, and attached to said motion an amended complaint wherein he eliminated Ignacio Cacho Parés as defendant and left Manuel Cacho Vega as sole defendant, alleging that the latter was the sole owner of the property and of the horse and prayed for judgment in the amount of $5,000. After several incidents which unnecessarily delayed the case, on February 25, 1941, the defendant answered the complaint, the case went to trial on March 3 of the same year and on August 11, 1941, almost three years after the accident, the lower court rendered judgment in favor of the minor for the sum of $1,300, together with costs and $200 for attorney's fees.

Feeling aggrieved by that judgment, the defendant appealed to this court. The hearing was held on June 10 and the case decided on November 24, 1943, wherein the judgment appealed from was reversed and the case remanded to the court of origin for a new trial. See Calderón v. Cacho, 62 P.R.R. 593.

In the opinion delivered by this court, speaking through Mr. Justice de Jesús, it was stated that the professional conduct of the attorneys for the minor seemed exceedingly strange and we gave a detailed account of the same facts related in the present opinion. We further stated that we refrained from making any comments in connection with the professional conduct of the attorneys, "in order not to prejudge the investigation of the matter which must be made by the Fiscal of this court."

On November 30, 1943, the attorneys for the minor filed a motion wherein they prayed that an immediate investigation of the conduct of the petitioners be ordered, and that while said investigation was pending, certain paragraphs of our opinion referring to the conduct of said attorneys be stricken out "inasmuch as a reading of said opinion by persons who are unaware of the professional diligence, and the promptness with which this case was filed, heard, and de-

cided in favor of the plaintiff minor, notwithstanding the fact that the minor's mother wished to settle or abandon the action, might prejudge as strange the conduct of these attorneys.'' By an order of December 1, 1943, we directed the *Fiscal* to commence immediately the investigation and we denied the elimination sought.

On May 1, 1944, the *Fiscal* of this court filed a complaint seeking the disbarment of the defendants, Attorneys Víctor Rivera Colón and Angel Rivera Colón. The same facts already copied are set forth in the complaint and relying on them the *Fiscal* has made the following specific charges:

1. That the filing of the complaint for $150 in the municipal court was made by the defendants without conferring with, and without the consent of, the minor's mother.

2. That when the original complaint was filed in the district court as well as when the other complaint was filed in the municipal court the defendant had full knowledge of the seriousness of the injuries sustained by the minor.

3. That the motion to settle the suit for the sum of $200 was filed by the defendants without the consent or approval of the minor's mother and with full knowledge that the injuries sustained by the minor were of a serious character which resulted in the permanent disability of the injured boy.

4. That the purpose of the defendants in performing such acts was to benefit the defendants and consequently to prejudice the minor; and if that purpose was never accomplished, it was due to the refusal of the district judge to approve the motion for dismissal and the proposed compromise.

The defendants answered. They denied having performed any act without the advice and consent or authorization of the minor's mother and on the contrary alleged that the filing of the complaint in the Municipal Court of Ciales was due to the insistent attitude of Mrs. Calderón in refusing to proceed with the action, ''and to the statements

of the mother of said minor that he was perfectly well'' and ''that she only wanted the defendant to pay all the services and expenses caused and accordingly signed an affidavit.'' The defendant also alleged that when they filed said complaints and motions they did not know the seriousness of the wound and injuries sustained by the minor; that at first, when they took charge of the case, the mother of the boy told them that the wounds were serious but that a few weeks later, when she insisted on abandoning the action or on settling it, Mrs. Calderón ''insistently told them that the minor, Luis Calderón, had recovered from the injuries and that the wounds were not serious''; that before filing the complaint in the municipal court the defendants visited Dr. Marchand and spoke about the condition of the minor and said physician ''told the defendants that he had improved from his wound''; that the defendants had no professional knowledge of the seriousness of the injuries ''until the hearing of the motion for dismissal''; and that they acted in good faith, relying on the statements of the minor's mother and of Dr. Marchand and the belief that a settlement for $150 or $200 would be to the advantage of the minor.''

The hearing of the case was held before the full court on the 11th of the present month and it was submitted for our decision on the evidence adduced by both parties. We shall summarize the evidence.

Santiaga Calderón, mother of the injured boy, testified: That when her son was seriously wounded she gave the case to Víctor Rivera Colón in order that he should institute an action, that he accepted and told her that he would file a complaint for the recovery of $5,000. That after the complaint was filed, Manuel Cacho and his son came to see her several times and asked her to compromise; that she told them to do the best they could because her son had not recovered but continued to be very ill; that she did not authorize any person nor her attorneys to settle for that

amount and that the attorneys never agreed to settle for that amount because they stated that it was not sufficient and for that reason they never compromised; that what they offered her was not even enough for the first visits of the doctor; that she did not want to settle for the amount of $150 and at no time did she consent to the proposed compromise; that she never knew of the complaint filed in the municipal court of Ciales; that she heard something about a motion filed in Arecibo to compromise for $200, but when "Angelito" saw that the child continued ill, he also refused to settle for that amount. That she remembers when she went to testify for the first time to the court of Arecibo, when they took her to, discuss defendants' offer, if they could make an offer for which they could settle, "not for $200 but for something which could help the boy to recover"; that she did not know that a motion to compromise had been filed; that that happened about a month and a half after the accident when the boy was still in the hospital and that when she went to take him home the doctor told her that they were going to operate on him again; that when she gave the case to the defendants they made no special agreement but she agreed to pay them out of whatever they obtained in the action. On being examined by the defense, she stated that the defendants had never seen the child before filing the complaint and she did not remember whether they saw the physician who treated him; that she had told the attorneys what had happened to the boy; that the Cachos went to see her several times and asked her to compromise because they were adjoining owners and if she refused they were going to plant some vegetables near her house to prevent her from raising chicken and that for that reason she "sometimes agreed and other times refused"; she told her attorneys what Cacho had said and they told her that they would never compromise for such a small amount of money; that she does not remember whether Angel Rivera Colón told her that he was

going to file a motion to compromise for $150 or $200; that at one time she went to the court of Arecibo with the boy, because she was summoned; that the only document which she signed with a cross, because she does not know how to write, was the motion to sue in *forma pauperis;* that this was the only time that she signed any document; that she never signed an affidavit before Don Pepe Parés, Justice of the Peace of Morovis, "I have not made a cross on any paper in front of Don Pepe Parés"; that it was before Juan Rodríguez that she signed the complaint, but that she never signed anything before Judge Parés.

After Dr. Juan Sixto Marchand described the wound received by the boy and the natural consequences thereof, he testified: That he had been treating the child for approximately three months. The boy is now 13 or 14 years of age, with a mental capacity of a four-year old boy and his physical development is that of about a boy nine years old, and that he will remain permanently incapacitated. The boy had been discharged as to the treatment of the wound, about three months after the accident. Víctor Rivera Colón had visited him once and asked him about the boy. He does not remember the exact words but they spoke about the boy. That conversation took place during the first two months of the boy's illness. He does not remember the details of the conversation, but he must have informed the attorney as to the serious character of the wound, and perhaps, although he does not remember it, he also explained the consequences of the wound. On the day of the hearing on the motion to compromise, Angel Rivera Colón came for him at his office in Manatí. He does not remember having spoken to the attorney during the trip from Manatí to Arecibo as to the character of the wound or as to what he was going to testify at the trial. He testified in the district court exactly the same as he is now testifying in this Supreme Court as to the seriousness

of the wound and the permanent incapacity of the injured boy. In answer to questions put by the defense, he testified that neither of the two defendants had ever come to him to ask him to testify in such a way as to lessen the nature of the wounds, and that he would not have permitted such a thing. When he testified in court that the wound and its consequences were serious, Angel Rivera Colón withdrew his motion to compromise. Upon being examined again by the *Fiscal* he answered: In his conversation with Víctor Rivera Colón the latter did not consult him as to whether or not the condition of the minor would justify a reduction from $5,000 to $200 in their claim. And neither was he consulted as to that particular by Angel Rivera Colón when he came for him to go to the hearing on the motion to compromise; but at Arecibo before the commencement of the hearing he spoke to the attorney about the case and about its consequences. It was not until he reached the court that he realized that they were trying to settle the case for $200. The attorney informed him to that effect and told him that it depended on his expert testimony as to how serious the case was. That if Víctor Rivera Colón had consulted him as to the consequences of the wound he certainly would have never stated in the motion for dismissal filed on December 5, 1938: "that after the injuries received and after conferring with the physician who treated said boy, the attorneys, acting with the express authorization of the petitioner, have reached the conclusion that the amount claimed is entirely exaggerated and out of proportion to the slight damages which the injured party has sustained." I told the attorney that the wound was unimportant but not so the consequences thereof; that is a different thing. In all his conversations with the attorneys he always stated that the wound was serious; that when Víctor Rivera Colón went to see him two months after the accident, if the latter had asked him about the wound he must have told him that the wound had been cured.

The boy, Luis Calderón, appeared as a witness. Just a few questions convinced the court that the boy was incapacitated as a result of the wound. When the accident occurred in 1938, he was in the second grade and six years afterwards, in 1944, he is still in the second grade. His mental capacity is really that of a four-year old boy. He looks feeble, week, and sick. He is about 13 or 14 years of age. He has the appearance of not being more than nine. The description of him by Dr. Marchand is correct.

Ignacio Cacho Parés testified that he learned about the action brought against him because Agustín Rivera Colón told him; that the same attorney suggested that he come to an agreement and told him: ''I'll fix that for you.'' Rivera Colón told him that he would settle the case for $300, but he answered that he was insolvent. Rivera Colón told him that he would settle for $200 and advised him to settle for that amount because he would spend more than that in attorney's fees. Then he, Cacho, agreed to settle the case, but through the court, because a minor was involved. He gave $15 to his father in order that it be delivered to one of the attorneys and agreed to pay the other $185 when the settlement was approved. He went to court on the day before the hearing of the motion to compromise and took with him the $185. Angel Rivera Colón told him to stay downstairs, that he would send for him if he needed him. When the attorney came down and asked him about the money, the attorney told him ''take it with you and I will let you know when to bring it.''

After the *Fiscal* introduced his evidence and the court took under advisement the question of defendant's motion to dismiss the complaint for insufficiency of the evidence, the defendants offered oral evidence as follows:

Defendant Víctor Rivera Colón testified that he graduated in June 1938, from the University of Puerto Rico and took his oath in July of the same year. He was then 26

years of age and he is now 32. He began to practice his profession as a lawyer under his brother's guidance in Ciales. He worked at night as teacher at the Central High School from 1938–1940. Mrs. Calderón sent word to him that she wanted to see him in regard to an accident which her boy had suffered. He went to see her and she told him that the boy was seriously ill, that he was going to die. Francisco Rivera Barreras, a classmate of his and the one who told him that Mrs. Calderón wished to see him, informed him that the wound was right in the middle of the forehead. He then filed the complaint for $5,000. A few days after the complaint had been filed, Mrs. Calderón went to see him and told him that she wanted to settle the case and that she was willing to accept the doctor's expenses which she had incurred; that at the beginning she had been deeply impressed with the wound, but that the child had improved, that he felt better and that she believed that it was not serious; that Cacho was rich and she did not want to have him as her enemy. He told her not to abandon the action, that it was a good case. He spoke about the case with attorney Rafael Padró Parés and the latter told him that it was better to settle the case because Mrs. Calderón was going to put him in a difficult condition; that he, as attorney for Manuel Cacho, would accept a suitable settlement for the boy, but "that I was too young and I did not know about those suits." He told Padró Parés that he had to speak with Dr. Marchand. He saw the doctor at his office and asked him the nature of the wound and the condition of the boy, and Marchand answered: "it is perfectly cured and has healed" and said nothing more. He could not doubt what the doctor told him because even the mother of the child had told him that the wound was slight. He did not ask the doctor about the consequences; he only asked him about the wound. He studied at the University of Puerto Rico and must admit that in the field of torts they did not

teach him how to prosecute those suits. The course he took lasted one semester. He spoke with Padró Parés, Cacho's attorney, about the compromise and asked him how could they settle the action since they had filed a complaint for $5,000 in the district court. Padró told him that there were two ways: by filing a motion for dismissal in the district court and another complaint in the municipal court, explaining to the court his reason for seeking a dismissal; or by taking the case to the district court in order to have the judge approve the compromise. That he must admit that he did not know how to go about a compromise of minors since he did not learn about it at the University. He looked for some information in 42 notebooks which he keeps of his courses, but he could not find anything to that effect. He then acted as Padró Parés had advised him, and filed the motion for dismissal together with a copy of the complaint filed in the municipal court. He had agreed with Padró not to summon Manuel Cacho in the municipal court until the district court approved the motion for dismissal. On the day after the filing of the motion, he met Manuel Benítez Flores, his former professor, at San Juan and told him what he had done and asked him if that was illegal. The professor answered him that it was not illegal, "but it is not correct" and added: "this matter might bring you some trouble in the future; you should see the judge and tell him the facts." He then went to see Judge Agraít and told him that the mother did not want to defend her son, that somebody was persuading her to drop the case and it was for that reason that the judge required evidence as to the condition of the minor and ordered the district attorney to make an investigation. Then, because of his inexperience and after conferring with his brother, they abandoned the complaint in the municipal court and left the compromise pending before the district court. It was then that his brother Angel intervened in the action.

The District Court Judges of San Juan, Ricardo La Costa and Rafael Cordovés Arana, and the Acting Attorney General, Jesús A. González, testified as to the good conduct of the defendants in the community.

The court again called Mrs. Calderón to testify and she stated that at the time of the accident her son was about six or seven years of age, that he was an intelligent boy and he was in the second grade. He was strong, healthy and smart. Now he is not. Most of the time he complains of headaches and earaches and can hardly see with one eye. He sleeps badly, he is still in the second grade. He suffers from nervous shock.

Defendant Angel Rivera Colón testified that he had first intervened in the case when the motion to compromise was filed. His brother Víctor asked him to continue the case in Arecibo because he had to be in San Juan. When Víctor told him about the motion for dismissal and about the complaint in the municipal court, he told him that that proceeding was incorrect, that he should have filed the motion to compromise in the district court. Two or three months elapsed and he heard nothing more from Víctor until the motion to compromise was filed. He appeared at the hearing of the motion and notified Mrs. Calderón and Dr. Marchand to appear at the court. When he heard the testimony of Dr. Marchand, he told the judge that he was not going to introduce any evidence because he believed that the case could not be settled and asked leave to file a motion abandoning the motion of dismissal. Judge Agraít stated that he could not consent to the settlement in view of the consequences that the minor might suffer later on. A few days later he filed a motion abandoning the compromise, and an amended complaint. On his trip with Dr. Marchand from Manatí to Arecibo they did not speak of the minor's condition nor about the consequences which the boy could suf-

fer as a result of the wound. He had not been informed about anything until he heard the doctor's testimony in court.

The testimony of Attorney Manuel Benítez Flores corroborated that of defendant Víctor Rivera Colón as to the question which the latter had asked him about the legality or correctness of the proceeding followed by said defendant to settle the action.

Hon. Ricardo Agraít Aldea, District Judge of Arecibo, testified: That he remembers the filing of a motion to abandon the case wherein it was stated that another complaint had been filed in the Municipal Court of Ciales. He refused to approve the dismissal and decided that the case should continue in the district court. He believes that one of the brothers, he thinks it was Víctor, told him that Mrs. Calderón insisted on settling the suit. This must have happened after the motion had been filed because, if he had asked him before, he would have never filed it. When the defendant filed the motion to compromise for $200, he told him that he could not accept the stipulation unless the doctor should testify in court and he could see the minor. When he heard the testimony of the physician he said: "We should not continue with this evidence; after hearing the testimony of the physician, I am not going to accept this compromise." Then Mr. Angel Rivera Colón stated: "I do not understand it, I am going to abandon it," and a few days later he filed the motion abandoning the compromise.

After a careful examination of the facts which we have just recited and as to which there is no controversy, we feel bound to confirm our opinion already expressed by this court as to the strange conduct of the attorneys for the minor in the proceeding for the recovery of damages.

It seems very strange that an attorney to whom the defense of a child who has been seriously and perhaps mortally wounded, is entrusted, should show so little interest in

his defendant that he does not even think of going to see him and learn about his condition, about the seriousness of the wounds and the consequences which those wounds might have on the child's life sometime in the future.

It is really strange that during all the time that elapsed from October 18, 1938, the day of the accident, until March 31, 1939, the day on which the motion to compromise was heard and dismissed, neither of the two attorneys for the defendant thought of visiting the child or calling upon the doctor who had treated the boy for three consecutive months to find out about his condition, especially when that same physician came with one of the attorneys, Angel Rivera Colón, from Manatí to Arecibo in order to testify in court in connection with the minor's health. By merely asking Dr. Marchand one question, the attorneys could have been informed about the pitiful condition of their client and could have spared themselves the sad experience of having the court reject, not without reason, their proposal to settle for the small amount of $150 as compensation for the suffering and permanent incapacity of their client.

It is surprising and strange that an attorney who through his inexperience or deficiency in his academic preparation does not know the steps which he must take to defend the interests of his client, should think that the only solution to his problem was to consult and follow the advice of the attorney for the opposing party.

Lack of experience, ignorance of procedure, and insufficiency in his academic preparation are the defenses alleged by the defendant Víctor Rivera Colón. They can account for his acts and even attenuate the responsibility in which he might have incurred, but they are not sufficient to spare him from being deservedly admonished and censured for the way in which he acted in the case entrusted to him. Not less but still more deserving of censure is the other defendant, Angel Rivera Colón, who committed the same misdeeds

as his brother, despite the fact that he has been practicing as a lawyer for 11 years prior to the occurrence of the facts above stated.

■ It is the duty of every lawyer to be diligent, active, and persevering in the defense of his client. In a case like the one of the minor Luis Calderón, it is inexcusable negligence not to have visited the injured child in order to be informed about the nature and the importance of his injuries, and likewise not to have visited the physician in order to learn about the probable consequences of the wound. It is advisable for every attorney to take an interest in obtaining personal knowledge of the facts, not only because it is necessary and desirable for the better defense of the case, but also as a means for the attorney to protect himself against a possible simulation or exaggeration on the part of the injured person. There have been many cases where the simulation, which could have been discovered by the attorney if he had been diligent enough, was plainly disclosed as the trial and the attorney, through his own negligence, was apt to be considered as having participated in such simulation.

■■ Since an attorney is an officer of the court, it is his duty to be truthful, honest, and sincere with the judges, setting forth all the facts clearly, without hiding those unfavorable to his cause and without exaggerating the favorable ones. In cases where the interests of minors are involved, if the attorney has any doubt as to how he should act for the best defense of those interests, he should obtain and follow as the best practice, the advice of the district judge who has the duty under the law to protect the interests of minors and of incapacitated persons. If the defendants herein had sought the advice of Judge Agraít instead of going to the attorney of the adverse party, they certainly would have been spared the suffering and pain of this proceeding.

. A complete disregard of these rules accounts for the fact that six years have elapsed since the accident, and still the injured child has not been able to recover the compensation to which he might be entitled. .

From the evidence introduced in this court and from the transcript of the evidence submitted in the lower court, as well as from the report of the *Fiscal* of this court, certain facts appear of which we must make mention, even though the *Fiscal* has not preferred any specific charge in the complaint before us with respect thereto. We refer to the alleged simulated contract entered into by Manuel Cacho Vega and his son Ignacio Cacho Parés for the alleged purpose of making Ignacio appear as lessee of the farm in order that the latter should be able to obtain from the Agricultural Adjustment Administration a larger sum than his father could have obtained as owner of the farm.

We must refrain from expressing our opinion as to the part which defendant Angel Rivera Colón may have taken in the preparation of said contract, for if no charge has been preferred against him it would be improper for us to make any pronouncement as to this fact, without giving the defendant an opportunity to be duly notified of the charge and to defend himself. However, we think that it is our duty to require the *Fiscal* of this court to file another complaint against Attorney Angel Rivera Colón in connection with the part that he might have taken in the preparation of the alleged simulated contract.

We trust that our remarks and advice may serve to enlighten and guide the defendants along the clear and steady path of the law as well as those who have begun to tread along that same path.

In view of the circumstances of this case, an order must be issued censuring the defendants for their conduct in the case to which the complaint refers.